Thank you. May it please the court. My name is Carly Hong and I represent Petitioner Monssef Cheneau. I will first address the citizenship claim and then the criminal convictions. Starting with the citizenship claim, there are legal issues and then factual ones. On the legal issue, there is a circuit split over what sections 321A5, and in particular, what the phrase, or thereafter, begins to reside permanently means. In 2008, Romero-Ruiz did not get it right, but in its defense, the court was never asked to answer the question that Mr. Cheneau's situation presents. In Romero-Ruiz, the citizenship claim was one of four different remedies the non-citizen was seeking. The court wasn't focused on the issue. The court looked at the statute in isolation and did so in a summary manner, using only three paragraphs to read through. Okay. So, so, so counsel, I'm going to apologize in advance for my long non-question. Sure. So a priori, I think you have a really, really good statutory construction argument. The way I read Romero-Ruiz, even though they didn't have this exact situation before it, I think it decided this question. And in addition, three of our sister circuits, the Second Circuit in Wazuzu, and I may be mispronouncing that, the Fifth Circuit in Gonzalez, and the Eleventh Circuit in Foley-Quintero. Each of those cases read our decision as having decided this exact question. And so even if you're right, I need you to explain to me why we're not down. Obviously our sister circuits saying that our prior case decided this exact issue doesn't require us to do so, but explain to me why they're wrong and how we can even reach the merits of this. Yes. So Romero, so it's, it's, it goes without saying that this court can't do its own research. They cannot raise new issues that the parties do not break to it. Okay. So counsel, I view that argument as a non-starter. So you're free to make it, but I think the argument that we can't rely on a case because the BIA didn't cite the case just as wrong. So I think, I think you can make that argument, but I'd like you to tell me why it doesn't bind us and that can't be in my view because the BIA didn't cite it. Your Honor, I apologize. I wasn't talking about not looking at Romero-Ruiz as much as in Romero-Ruiz. They discussed this within three paragraphs, looking at the statute in complete isolation. It did not look at the legislative history. It did not look at what the terms meant. It did not look at other parts of the INA. That's why under footnote five, the second circuit said Romero's, and then it was used as a case in the second circuit. They said Romero-Ruiz basically did nothing. It's not persuasive. Yes. But the second circuit also said in footnote five, starting footnote five, we recognize that the other, the two other circuits to have considered this have held to the contrary. And in our decision, we talk about that the first clause would be superfluous. I mean, they say to interpret the second clause as conferring derivative citizenship would render the first clause superfluous. I need to understand your argument as to why that doesn't bind us. Even if you're right in the abstract as to the statutory construction argument, under our precedent, we can't ignore this unless there's been intervening authority that calls it into question, either one of our own cases in bank or a Supreme Court decision, not just that we think they didn't consider what they should have. Pucutas disagrees with you, Your Honor. In Pucutas, this court has said that subsequent panels are not foreclosed by incomplete decisions, that a published decision does not foreclose all issues. They use the word a prelude to issues that are now properly before the court. In Pucutas, it was an analogous situation where there, the published decision in two sentences found that the agency interpretation was a certain result, but in that decision, they did not look at the legislative history. They did not consider other factors, which are actually the proper interpretation. So again, I apologize for the pronunciation, but Pucutas allows this court to look at the cases and look at the issues that are before this court. What Romero Ruiz did not have, which Mr. Child, who was living in the United States with legal status, had the objective intent to reside here as contemplated under the 325A. But the problem, counsel, I mean, I guess I have the same concern that Judge Bennett expressed, which is, for the reason you just said, Romero Ruiz could have been written more narrowly, and the court in that case could have reached the result that it did there while writing an opinion that didn't address the issue that you're now presenting to us. But the opinion they actually wrote, and I'm just looking at, you know, at the very beginning, the first sentence, they said that they framed the question as whether an immigrant who did not have lawful permanent residence status at the time of his mother's naturalization is eligible for derivative citizenship, and then said, we conclude that he is not. So just because they could have written it more narrowly, like the holding they actually announced, seems like it does resolve the issue that you have, doesn't it? Again, the decision of Pacutas is uncannily on point. And then there they said that the prior decision by this court was dicta in the same way that Mr. Romero Ruiz, he wasn't here under lawful status. He had abandoned his adjustment status when he left the country, and he was actually inadmissible when he claimed to be a citizenship. So under the facts of the case, he wasn't here lawfully. So the question of when someone like Mr. Cheneau is, the prior holding was factually distinguishable because it was on dicta alone that could have decided that issue. So starting at that point, this panel of the court does have the duty to reconsider whether a summary decision, which is what Romero Ruiz is, is in fact the correct one in light of new law and new facts now presented to the panel. And there are five reasons why Romero Ruiz got it wrong. The first is that the text itself uses different words. The phrase lawful admission for permanent residence is a term of art in the INA. But the phrase reside permanently is not defined, but the term reside is in 1101A31 and permanently is in 1101A33. This suggests that Congress used those terms intentionally. And so the phrase reside permanently, as found by the first circuit, is used elsewhere in the INA. And it means something that's not tied to the legal admission of the LPR status. This is what Muzuzu found and also the first circuit and Thomas found. The only reasonable inference is that when Congress uses different words in the exact same subsection, it intends different meanings. And second- And before you move on to your next point, how does your client meet the reside permanently in the United States provision? How does he meet that in this case? Yes, he does. His facts are similar to Muzuzu, which at age 15, his mother filed for the citizenship application for him. Before he turned 18, he actively pursued that application when his mother made, what she said, a lot of inquiries into the status of that case. And I think the third factor is that that application was a bona fide one. It was actually granted when he was 18 years and eight months old. And that is different than Ramiro's Ruiz, where that application was denied because it wasn't bona fide and there wasn't a basis to grant him citizenship. So the facts on this case show that Mr. Chenot actually does have the basis to show that he was legally in the United States and had an objective intent to reside here permanently. Counsel, you don't have to address this right now, but I want to make sure that you have this in mind. If we get to the receiving conviction, I wanted to find out, are you familiar with our 2018 case, United States versus Flores at 901 F3rd 1150? No, Your Honor. In that case, we decided that California receiving was categorically an aggravated felony. Your Honor, if I may, I'd like an opportunity to brief that. I'm not familiar with that. I do know that under Lopez Valencia, there the court said for the aggravated felony that the theft statute in California is not- Yes, but counsel, if we feel it necessary, we'll give both you and the government the opportunity, but my read of this Flores case from August of 2018 is that it reads and rejected that argument and found that the BIA's determinations of aggravated felony on receiving were entitled to deference, but if you're not familiar with the case, obviously you can't discuss a case you're not familiar with, but if we need to reach it, we will discuss whether to give both counsel an opportunity to discuss it. Okay, and so, Your Honor, on the second point, I would like to, if the court disagrees on the derivative of citizenship issue on the criminal convictions, the government agrees that Mr. Cheneau's burglary offense is no longer an aggravated felony. DiMaia said it's not a crime of violence. The camp said it's not a theft offense. That was the sole deportable ground that the BIA chose both in 2002 and 2003. Right, but you addressed in your briefs receiving, and if it's clear that receiving is an aggravated felony, there's nothing to remand for, and I believe we've decided that in August of 2018, but again, if we need to reach that, we will discuss whether to give both counsel an opportunity to discuss the case. Thank you, Your Honor, and on the point of remand, though, Kenyo's holder has clarified that when there's no need to remand the CIMT issues when subsequent case law has settled it after the agency's decision, and Chalup-Higuera, I think, was even more on point where termination without remand is the proper remedy when the DHS failed to develop the record before. There, and Chalup-Higuera said the BIA cannot have a second bite at the apple, and in this case, the BIA would have a third bite at the apple. At a certain point, the BIA, the litigation has to end, and the BIA can't simply have a remand and just pick and choose each criminal defense expecting that the BIA will just simply, this court will remand it to allow it to have two, three, four, five bites at the apple. So, on the criminal convictions, with all due respect, I would ask the court to then just terminate the case outright, given that this is the second time in 10 years that this case has been before the Ninth Circuit. Would you like to reserve the remainder of your time? Yes, yes, please. All right, we'll give you two and a half minutes for rebuttal. Counsel for the Attorney General. Good afternoon. May it please the court. My name is Craig Newell. I'm here on behalf of the Attorney General. The first point I will address is the discussion of this court's prior Romero-Ruiz decision. That decision should be read broadly and governs, controls the outcome here. If you look at how the court in Romero-Ruiz, this is not just a summary decision, how it and the final conclusion that he, that Mr. Romero-Ruiz didn't derive citizenship because he was not presiding pursuant to a lawful admission for permanent residence. As to the reasoning, first the court in that decision said a plain reading of the statute evidence is that the purpose of these two clauses, the first and second clauses, it's really about all, it's a timing requirement. Whether the lawful permanent residence had to either occur either before or after, as long as it occurred one or the other. But counsel, putting aside for the moment the question of whether it's binding on us or not, you agree that in that case, the alien was absolutely not in the country lawfully under any factual scenario. But in this case, the petitioner was in the country lawfully at relevant time, whichever statute we're looking at, correct? I agree, Your Honor. That is the wiggle room, if you would like to call it that. Romero-Ruiz, that he had no status at any time. But what Mr. Cheneau is advocating for, this manifestation of an objective intent to reside permanently, is not the type of clear demarcation you would want for determining who is invested with United States citizenship. Derivative citizenship is something that occurs automatically. It occurs upon these three, once these three certain conditions have been met. Counsel, I do want to remember to ask you this question. I'm sorry to interrupt. At page three of your brief, you indicate no genuine issue of material fact regarding citizenship that's involved in this case. Does that mean that you agree that if we reached the statutory construction argument and agreed that there would be no need to transfer this case to the district court for any factual findings regarding petitioner's derivative citizenship? Yes, Your Honor. This case just presents the legal question. May I interrupt now while you're regathering your thoughts? Oh, sure, Your Honor. Judge Pearson, you brought up a point in distinguishing Romero-Weiss from the instant case. You heard your colleague on the other side say that his mother had made inquiries. We know he had been mailed an application. It went to the wrong address, no fault of his own. And it seems, based on later action, that had he received that which was misdirected by mail, he may not have even had this close encounter, the difficulty of not having become lawful until 18. What's your response to that? Any effect you believe it should have on our adjudication? First, I'd address that what Mr. Chenault is advocating for is a pretty – it's either a very malleable standard, or he's simply advocating for the fact that filing an application for permanent residence is the equivalent of permanent residence. And this is while he is here on a temporary non-immigrant student visa, which prevents him from abandoning his – Counsel, I don't think that's what he's advocating for. I think he's advocating for a statutory construction argument that Congress did not mean the exact same thing when it used two completely different terms in the statute. Lawful admission for permanent residence and begins to reside permanently. I mean, your statutory construction argument is that they mean exactly the same thing, correct? Not exactly, Your Honor. The statutory construction argument is this. And what happens with the Second Circuit's decision and Mr. Chenault's position is they start with the fact that there's different wording, and that is a presumption under statutory construction rules, but it's not a mandate. And here, the way to look at this is that residing permanently, the physicality of residing permanently, but the only way to reside here permanently under the INA is through being accorded lawful permanent residence. There's no other way to do that. So basically, Counsel, you want us to read the old statute exactly the way essentially Congress passed the new statute, that they didn't even use two terms because they made clear that you had to be pursuant to a lawful admission for permanent residence, and that that's what the old statute meant, even though it used two entirely different terms. Yes, Your Honor, the new statute is more precise. And instead of assuming that it means that these two statutes had different requirements, it could mean that the phrase residing permanently has always required having lawful permanent residence back. You need to go back and look where this phrase begins to reside permanently came from. It comes from a 1907 version of the derivative citizenship statute. Prior to that statute, it was unknown how a child who was living abroad, how they would become, if they would become a citizen, when their parents naturalized. And they did by coming here and beginning to reside permanently. If you look to the 1952 Senate report for the Immigration and Nationality Act, it says that lawful permanent residence has always been a prerequisite. Counsel, I think that I assume you're referring to the 1950 Senate report. And what it says there is that lawful permanent residence, R-E-S-I-D-E-N-C-E, has always been a prerequisite to derivative citizenship. It doesn't say, using the terms of the statute, that lawful admission for permanent residence is a prerequisite. Lawful permanent residence, which I think the natural interpretation of that term is you're here lawfully and you're permanently residing, not pursuant to this one specific legal status. The concern with that viewpoint is that how does having a residence, a principal, in fact, dwelling place here, be permanent, or as it's defined, continuing or lasting, without having to have the lawfully, having being lawfully admitted for permanent residence? There's no other express way from the INA to get to that. I mean, you can't, if you have to, if you were in a non-immigrant status, like Mr. Cheneaux, with a student visa, he would have to apply either a justice status here. Counsel, don't courts have to make those factual findings in a variety of different contexts when looking at diversity of citizenship? Don't courts often have to decide where somebody is a citizen and resident based on intent to reside permanently? And in this case, if we decided that there were factual issues and said there aren't, I mean, isn't that a factual determination that a district court is perfectly capable and often does have to make? Yes, Your Honor. Figuring out someone's intent is a factual issue that a district court is more than capable of making. The thing here is, though, that residence, under the Immigration and Nationality Act, is without regard to intent as its definition, and Mr. Cheneaux's reading of begins to reside permanently, writes into the statute a looking at to intent, into the issue of an intent that shouldn't be there. Derivative citizenship is automatically conferred. It doesn't need an official imprimatur from an executive agency or a judicial ruling. It just happens upon the three conditions being met. And so there needs to be clear decontamination for who becomes a United States citizen. When you're talking about an age, you have 18th birthday, the date of naturalization, and the date of residing here with lawful permanent residence status, those are very clear and crisp dates that can be easily determined and easily found. Counsel, I don't mean to be flip about it, but that's a great reason for Congress changing the statute to the way it now reads. But it's just if we were free to decide the issue unrestrained by prior decisions, I would just have a very hard statutory construction time saying, especially given the way this dropped into the statute in around 1950, that lawful admission is the same as begins to reside permanently because Congress, as it did in the new statute, knows how to not use two different terms when they want them to meet in the same thing. I understand, Your Honor, and that is because of the statutory construction rule about presuming when there's two different wordings that they must mean something differently. But it is conflicting with another rule of statutory construction that if you adopt Mr. No's reading, you end up with the first cause effectively being rendered negated, surplus. Anyone who doesn't have lawful permanent residence prior to their parent's naturalization can, for whatever reason, more than muster this manifestation of an objective intent to reside here permanently. You have this clash of the two different rules of statutory construction. But if you instead logically start with the definitions of permanent and residence and see that within the definition of lawfully admitted from permanent residence includes the phrase residing permanently, the same phrase. There is a difference, but the difference is just simply the physicality of actually your residence here and the status of being a lawful permanent residence. Those can, you can at some point in time have that status, but for whatever reason not be residing here or choosing not to. So it depends on the approach. And Romero-Ruiz, as part of its reasoning, relied on the approach of rendering that first reading of the second clause allowing something less than permanent residence because it would render that first clause surplusage in the grand scheme of things. Counsel, may I ask, this is Judge Miller, may I ask, if we agree with you on the derivative citizenship issue, can you just clarify, am I correct that it is your position that we should remand given that under DiMaia the burglary conviction doesn't count and you want us to remand to allow the board in the first instance to consider the other convictions that might or might not be a basis for removal? Is that right? Yes, Your Honor, the court, if it agrees on the citizenship claim with the government should remand for the board in the first instance to address the other removability charges. Counsel, are you familiar with the case I brought to the attention of your colleague from 2018? I am, Your Honor, and it is referenced in the government's brief when a significant amount of time has passed between when his actual immigration court proceedings happened in the first and then the second and now here we are today. And so there are certain convictions and grounds that are most likely are no longer removable convictions, but his receipt of stolen property conviction is a categorical aggravated felony theft under that Flores decision. But you're not asking us to say that? No, Your Honor, because as Chenery requires, you know, this court reviews the determinations that the board, the grounds the board relied on. The board, you know, at the time it made its decision in 2015, it was clear that his burglary was a crime of violence, aggravated felony, and in its capacity as a neutral agency arbitrator only needed one removal ground to issue its final order of removal. So it's not getting a second bite of the apple. It's just going to be able to see if there are another ground, which there is, this aggravated felony theft ground. I noticed, I believe it's my time. Your time has expired. Thank you, counsel. Okay. Thank you very much, Your Honors. All right. Ms. Han, you have a little over two minutes. Thank you. I have three points. The first at page 1082 and 1081 in Pacuta's, there, the court did what I'm asking this court to do, which is to step aside, step aside a prior published decision, because there, Pacuta said that the Kaiser Luminen case that was published bears the hallmarks of dicta and quoted to a Judge Kaczynski quote, where he said, where a statement is uttered in passing without due consideration of the alternatives or whereas prelude to legal issue that commands the full attention, it could be appropriate to revisit any other case. That court there noticed that that would be a proper here because the opinion there had no analysis of the text. It did not discuss the arguments for or against and did not look at the other ambiguity that would exist. As a result, those are the same problems that are effective in the Romero-Ruiz case, where they did not consider the legislative history. They did not consider the facts that residence and permanent are defined elsewhere in the INA. So I would ask the court to follow that procedure there. The second point, my brother misstated by saying that who knows what permanently means other than it can't mean temporary. Congress has disagreed. Congress has clearly defined what permanent means in the INA, which is at 1101-A31. And this means it's a relationship of continuing or lasting nature, even if it can be extinguished by the alien or the government. So for this, an admission and a lawful admission is not needed to make someone permanent. The third point is that if you read the statute the way that the Second Circuit, the First Circuit do, is that the first clause is not superfluous. To the contrary, 321 has two pathways to citizenship. The first is at the moment that the parent becomes a citizen, if the child has been admitted as an LPR, that child then automatically becomes a citizen at that time. The second pathway is that after the parent becomes a citizen, before the child is 18, there is a window of time. And in that window of time, if the child begins to reside permanently in the United States, that child then becomes a citizen. And Katzel, why don't you conclude? Okay. And as noted by the First Circuit, if you don't accept the two different pathways, the phrase thereafter begins, and the disjunctive or is what becomes superfluous. All right. Thank you. We thank both counsel for their helpful arguments. We'll make a decision on whether the case is submitted today after we discuss whether we would require supplemental briefing. So the final case.
judges: Pearson, Bennett, Miller